UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

STEVEN ALLEN WALD,

        Defendant-Appellant.

No. 99-4044

---

ORDER
Filed July 10, 2000

---

Before **MURPHY, ALARCON,**[*] and **PORFILIO,** Circuit Judges.

---

This matter is before the court on appellee's petition for rehearing with suggestion for rehearing en banc and appellant's response.  The panel votes to grant the petition for rehearing and a revised opinion is attached to this order.

The suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular active service as required by Fed. R. App. P. 35.  A member of the active court called for a poll of the court pursuant to Fed. R. App.

---

[*]Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

P. 35(f). Judges Tacha, Baldock, Ebel, Kelly and Henry voted to grant rehearing

en banc. Five remaining active judges voted to deny rehearing en banc.

Consequently, the petition for rehearing en banc is denied. *See* Fed R. App. P.

35(a).

Entered for the Court
PATRICK FISHER, Clerk of Court


By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN ALLEN WALD,

Defendant-Appellant.

No. 99-4044

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 98-CR-417-K)

---

Lynn Clark Donaldson, of Salt Lake City, Utah, for Appellant.

Leshia Marie Lee-Dixon, Assistant United States Attorney, Salt Lake City, Utah,
(Paul M. Warner, United States Attorney, with her on the brief), for Appellee.

---

Before **MURPHY**, **ALARCON**,* and **PORFILIO**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

*Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

## I. INTRODUCTION

After conditionally pleading guilty to possession with intent to distribute methamphetamine, Steven Allen Wald now challenges the district court's denial of his motion to suppress both the methamphetamine discovered in the trunk of his vehicle and his post-arrest statements. Wald's appeal presents the following issue: whether probable cause to search a car's trunk exists when a law enforcement officer smells burnt methamphetamine in the vehicle but the officer finds only evidence which is as consistent with innocent activity as with the suspicion of drug usage. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court answers that question in the negative. We thus **reverse** the district court's denial of Wald's suppression motion and **remand to vacate** his conviction and sentence.

## II. BACKGROUND

Wald was indicted on one count of possession with intent to distribute methamphetamine. He moved to suppress both the methamphetamine found in the trunk of his car and statements made following his arrest. After conducting an evidentiary hearing on those motions, the district court made the following findings of fact:

1.	On August 10, 1998, at approximately 7:25 a.m., Sgt. Paul Mangelson of the Utah Highway Patrol was stationary in his patrol vehicle on Interstate I-15 near milepost 215 facing north-bound traffic. While in his vehicle Sgt. Mangelson's attention was drawn to a blue sedan traveling north-bound. Mangelson noticed that the vehicle had a badly cracked front windshield. The crack went almost the full width of the windshield. Based upon the concern of an equipment violation, that is the cracked windshield, Sgt. Mangelson effectuated a stop of the vehicle. When Sgt. Mangelson activated his overhead lights, a video camera in his vehicle was also activated. The video camera recorded the remainder of the encounter.

2.	The vehicle pulled over without incident and Sgt. Mangelson approached the vehicle and viewed the windshield. As he had previously observed, the windshield was in fact cracked.

3.	The driver of the vehicle was Mr. Ramirez and Mr. Wald was in the passenger's seat. Sgt. Mangelson requested a driver's license and registration and asked where the defendants were coming from and where they were going. Mr. Ramirez was quite talkative and told Mangelson that they were on their way home from a weekend in Las Vegas. Mr. Ramirez's license was valid and the registration showed that the vehicle belonged to Mr. Wald. Sgt. Mangelson asked the defendants about the cracked windshield to which they replied that it had happened on the trip and they had not had a chance to fix it.

4.	Sgt. Mangelson observed at this time that both Ramirez and Wald appeared to be nervous. Further, Wald had bloodshot and glassy eyes and Sgt. Mangelson detected an odor emanating from the vehicle which he believed, based upon his experience, to be burnt methamphetamine. Further, he noticed visine and a road atlas in the vehicle, which in his experience, when combined with the scent of drugs, are items associated with drug trafficking. Based upon the totality of the circumstances, Mangelson asked if he could take a quick look in the vehicle.

5.  Defendant Wald gave his consent to Mangelson to take a quick look at the interior of the vehicle. At this time both defendants exited the vehicle. A search of the interior of the vehicle did not reveal any contraband.

6.  Sgt. Mangelson then did a pat-down search of defendant Wald. The purpose of this search was primarily to look for drugs. During the search he found two pipes in the defendant's pocket which he told the defendant to remove.

7.  Sgt. Mangelson asked Wald if the pipes had been used for either marijuana or cocaine to which Wald told him no. At this time Mangelson proceeded to search the trunk of the vehicle. He found a couple of items of luggage and an ice chest. In the luggage Mangelson found two torches used in smoking methamphetamine.

8.  Sgt. Mangelson then noticed that the speakers in the trunk had outside screws that were marked up. The screws appeared to have fresh marks indicating that they had been removed. Mangelson then obtained a Phillips screwdriver and opened the side of the speaker. Inside he discovered two packages that had an apparent odor of methamphetamine. The packages later tested positive for methamphetamine.

9.  Upon discovering the methamphetamine, Sgt. Mangelson arrested the occupants of the vehicle and administered *Miranda* warnings. Defendant Wald admitted that he had been smoking methamphetamine that morning. Both defendants denied any knowledge of the drugs in the speakers.

Based on these factual findings, the district court issued the following rulings relevant to this appeal: (1) the vehicle stop was constitutionally permissible; (2) Wald gave Mangelson consent to quickly search the passenger compartment only; (3) the pat-down search of Wald which revealed drug paraphernalia violated the Fourth Amendment as interpreted in *Terry v. Ohio*, 392

U.S. 1 (1968), because it was aimed at finding drugs, not weapons; (4) the drugs found in the trunk were nonetheless admissible, because Mangelson had probable cause to search the trunk based on circumstances which existed prior to the illegal pat-down, i.e., the odor of methamphetamine which "could permeate from the trunk," the defendants' nervousness, the appearance of Wald's eyes, and the presence of visine and a road atlas in the passenger compartment; and (5) Wald's statements were admissible because Mangelson gave him proper *Miranda* warnings prior to any custodial interrogation.

Subsequently, Wald entered a guilty plea conditional on his appeal of the district court's suppression rulings. The district court then sentenced Wald to seventy months imprisonment followed by thirty-six months supervised release and imposed a $100 assessment and $350 fine.

## III. DISCUSSION

In reviewing the denial of a motion to suppress, "this court accepts the district court's factual findings unless clearly erroneous." *United States v. Downs*, 151 F.3d 1301, 1302 (10th Cir. 1998). The district court's determination of reasonableness under the Fourth Amendment, however, is reviewed *de novo*. *See United States v. Anderson*, 114 F.3d 1059, 1063 (10th Cir. 1997).

In *United States v. Ross*, the Supreme Court determined that the permissible scope of a warrantless automobile search "is defined by the object of the search and the places in which there is probable cause to believe it may be found." 456 U.S. 798, 824 (1982). Relying on this principle, this court has held that although the smell of burnt marijuana emanating from a vehicle provides probable cause to search the passenger compartment of that vehicle, if that search fails to uncover corroborating evidence of contraband, probable cause to search the trunk of the vehicle does not exist. *See United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995); *Downs*, 151 F.3d at 1303. This rule is premised on the common-sense proposition that the smell of burnt marijuana is indicative of drug usage, rather than drug trafficking, and because it is unreasonable to believe people smoke marijuana in the trunks of cars, the mere smell of burnt marijuana does not create the fair probability that the trunk contains marijuana. *See Downs*, 151 F.3d at 1303.

According to the district court's factual findings, when first speaking with Wald and Ramirez, "Mangelson observed . . . that both Ramirez and Wald appeared to be nervous [and that] Wald had bloodshot and glassy eyes. [Additionally,] Mangelson detected an odor emanating from the vehicle which he

-6-

believed, based upon his experience, to be burnt methamphetamine."[1] Mangelson further noticed at that time the presence of Visine, a road atlas, a couple of pieces of luggage, and a couple of wine coolers in the passenger compartment. [Vol. II at 16] He testified that based on these observations, he suspected "drug usage." [id] Under *Nielsen*, the mere odor of burnt methamphetamine did not provide Mangelson probable cause to search the trunk of Wald's car; a trunk search would be justified only if the other evidence which Mangelson observed amounted to corroborating evidence of contraband or if a subsequent lawful search of the passenger compartment yielded such corroborating evidence.[2]

The government contends that sufficient corroborating evidence existed to provide the requisite probable cause for the trunk search. Specifically, the government argues the following evidence constituted corroboration of contraband possession: (1) the presence of Visine, a road atlas, and wine coolers in the passenger compartment; (2) the presence of only two pieces of luggage in

---

[1] Wald challenges as clearly erroneous the district court's factual finding that Mangelson smelled burnt methamphetamine. Because this court concludes that probable cause did not exist to search the trunk even if Mangelson did detect an odor of burnt methamphetamine, we need not resolve whether the district court's factual finding was clearly erroneous. This court also need not address Wald's alternative argument that the scope of his detention exceeded permissible bounds due to the illegal pat-down.

[2] After obtaining Wald's consent, Mangelson did in fact perform a subsequent search of the passenger compartment, but found nothing of significance.

the vehicle; (3) the bloodshot, glassy appearance of Wald's eyes; (4) nervousness exhibited by both Wald and Ramirez; (5) Wald's difficulty in producing the vehicle's registration; and (6) the pipes found during the pat-down search of Wald.

Although the discovery of drug paraphernalia might provide probable cause to search the trunk of a vehicle, the district court concluded that the pipes found on Wald's person were uncovered during an unconstitutional pat-down search. A law enforcement officer may constitutionally conduct a warrantless pat-down search of a person if the officer harbors an articulable and reasonable suspicion that the person is presently armed and dangerous. *See Terry*, 392 U.S. at 21, 27; *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996). The district court specifically found that Mangelson's purpose in frisking Wald "was not to look for weapons but to look for drugs." Although this court has never directly

addressed the question of whether an officer's subjective motivation is at all relevant to a *Terry* analys

is, other circuits are split on the issue. *Compare United States v. Brown*, 188 F.3d 860, 866 (7th Cir. 1999)

(holding that an officer's motivation is irrelevant because the test is purely objective); *United States*

*v.*

*Cummins*, 920 F.2d 498, 502 (8th Cir. 1990) (same) *with United States v. Lott*, 870 F.2d 778,

783-84 (1st Cir. 1989) (holding a frisk violates the Fourth Amendment if "the officers in the field

-13-

were not actually concerned for their safety"); *United States v. Prim*, 698 F.2d 972, 975 (9th

Cir. 1983) (stating that the *Terry* reasonableness standard is "applied to the actual and/or perceived belief

-15-

of the law enforcement officer as he either stops and detains or engages in a search and seizure").

We need not resolve that question in the instant case, however, because the circumstances facing Mangelson

when

he

friske

d

Wald

did

not

give

rise to

an

object

ively

reaso

nable

suspic

ion

that

Wald

was

armed

and dange rous. The distric t court thus prope rly ruled that the pat-down violat ed Wald's Fourt

h Amendment rights. We therefore cannot consider the pipes in determining whether proba

ble

cause

existe

d to

search

the

trunk

and

we

need

not

decid

e

wheth

er the

pipes,

if

admis

sible,

would

have

justifi

ed the

trunk

search

.

The remaining evidence upon which the government relies does not sufficiently corroborate a suspicion of contraband possession to lawfully permit the trunk search. In undertaking probable cause determinations, this court recognizes that "[s]ome facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous." *United States v. Lee*, 73 F.3d 1034, 1039 (10th Cir. 1996); *see also Reid v. Georgia*, 448 U.S. 438, 441 (1980). The road atlas, the luggage, the Visine, the appearance of Wald's eyes, and the wine coolers all fall into that category. As to the road atlas, this court previously stated, "The presence of open maps in the passenger compartment . . . is entirely consistent with innocent travel such that, in the absence of contradictory information, it cannot reasonably be said to give rise to suspicion of criminal activity." *United States v. Wood*, 106 F.3d 942, 947 (10th Cir. 1997). Similarly, the presence of only two pieces of luggage for two people on a purported weekend road trip to Las Vegas is not at all suspicious. Although

Visine may raise slightly more suspicion because it can be used to mask the effects of drug usage, its presence in a vehicle can just as plausibly be explained by a driver's need to maintain clear vision during a lengthy road trip which began in the early morning, as was the case with Wald and Ramirez. Correspondingly, bloodshot, glassy eyes are equally susceptible to perfectly innocent explanations, such as Wald's somnolent state due to an early morning departure from Las Vegas. [Vol. II at 58] Furthermore, while the presence of wine coolers may have justified a suspicion of driving under the influence, the record fails to indicate that Mangelson harbored any such suspicion; the wine coolers do not, however, constitute corroborating evidence of a suspicion of drug possession or trafficking.

Finally, as this court has repeatedly recognized, the nervousness which Mangelson observed when he confronted Wald and Ramirez "is of limited significance" in determining whether probable cause to search the trunk existed, particularly when Mangelson had no prior acquaintance with these two men. *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir. 1994); *see also United States v. Millan-Diaz*, 975 F.2d 720, 722 (10th Cir. 1992); *United States v. Hall*, 978 F.2d 616, 621 (10th Cir. 1992). "It is certainly not uncommon for most citizens–whether innocent or guilty–to exhibit signs of nervousness when confronted by a law enforcement officer." *Wood*, 106 F.3d at 948. Wald's fumbling for his vehicle registration suggested nothing more than such innocuous

nervousness; ultimately, he did produce a valid registration.  Therefore, consistent with *Nielsen*, Wald's and Ramirez's nervousness did not sufficiently corroborate Mangelson's suspicion of contraband possession to justify a search of the vehicle's trunk.  *See Nielsen*, 9 F.3d at 1491.

In sum, none of the evidence upon which the government relies to substantiate Mangelson's suspicion based on smelling burnt methamphetamine, either individually or collectively, sufficiently corroborates that suspicion to provide the requisite probable cause for the trunk search.

In reaching the contrary conclusion, the district court relied on Mangelson's testimony about the pungent odor of methamphetamine and inferred that such an odor "could permeate from the trunk" of the vehicle.  Had Mangelson testified that he detected the odor of *raw* methamphetamine, such evidence, if based upon proper foundation, would have sufficed to provide probable cause for the trunk search.  *See Downs*, 151 F.3d at 1303 (holding that when an officer encounters "the overpowering smell of *raw* marijuana" emanating from a vehicle, probable cause to search the vehicle's trunk exists (emphasis added)).  In the instant case, however, Mangelson testified that he smelled only *burnt* methamphetamine, not *raw* methamphetamine, and that burnt methamphetamine has a distinctively pungent odor.  Following *Nielsen* and its progeny, the strong odor of burnt methamphetamine, whether or not it can permeate trunks, does not provide

-24-

probable cause to search a trunk, because it is unreasonable to think someone smoked drugs in the trunk of a car.

Finally, the government offers the alternative argument that even if no probable cause to search the trunk existed, Wald consented to the trunk search. Addressing the extent of Wald's consent to search the vehicle, the district court concluded, "Wald gave Sgt. Mangelson consent to take a quick look inside the vehicle. Wald's consent did not go any further than the interior of the vehicle and at no time did he give consent to a search of the trunk." "Whether a search remains within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances, and a trial court's findings will be upheld unless they are clearly erroneous." *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990). The test for measuring the scope of consent is one of objective reasonableness: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

A review of the videotape recording of the traffic stop reveals that Mangelson asked Wald and Ramirez the following question: "You wouldn't mind if I take a quick look, would you?" One or both of the defendants responded, "No." A reasonable observer of this exchange would not likely conclude that Wald gave Mangelson permission to search the vehicle's trunk.

-25-

The government asserts that because Wald did not later object when Mangelson began searching the trunk, the trunk search must have fallen within the scope of Wald's consent. As a general proposition, this court has determined that a defendant's "failure to object when the search exceeds what he later claims was a more limited consent[] is an indication the search was within the scope of consent." *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999). That rule, however, applies only when the defendant initially gave "a *general* authorization to search." *Id.* (emphasis added). Here, the district court found that Wald's initial consent was not general, but rather was limited to a "quick look inside the vehicle," a finding we affirm as not clearly erroneous. Moreover, it is significant that when Mangelson began searching the trunk, he had already discovered the drug paraphernalia on Wald and informed Wald, "You're in a little bit of trouble, aren't you." A reasonable person, therefore, might well conclude that Wald's failure to object to the search of the trunk stemmed from his belief that he was currently under arrest and therefore had no power to prevent the trunk search. Mangelson even testified that upon his discovering the pipes, Wald and Ramirez "were not free to go." This court cannot conclude on this record the district court's finding that Wald's consent to search was limited to a quick look inside the passenger compartment was clearly erroneous.

In sum, because Wald did not consent to a search of his car's trunk and Mangelson lacked probable cause to do so, the methamphetamine and any other evidence found inside the trunk should have been suppressed. As a consequence, Wald's post-arrest statements to law enforcement officers also should have been suppressed as a fruit of the illegal search and subsequent arrest.[3] *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

IV. CONCLUSION

Because the district court erred in denying Wald's motion to suppress both the evidence discovered in the trunk of his vehicle and his post-arrest statements, this court hereby **REVERSES** the district court's denial of Wald's suppression motion, orders that the District Court for the District of Utah **VACATE** his conviction and sentence, and **REMANDS** for further proceedings consistent with this opinion.

---

[3] The government does not dispute Wald's claim that his statements constitute fruit of the poisonous tree, should this court hold the trunk search invalid. Having so concluded, this court need not address Wald's alternative argument that the district court, in denying his motion to suppress those statements, improperly failed to rule on the voluntariness of his statements.