FILED
United States Court of Appeals
Tenth Circuit

April 23, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RONALD G. DOSS,

    Defendant-Appellant.

No.06-4312
(District of Utah)
(D.C. No.2:05-CR-861-TC )

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY,** Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **BRISCOE,** Circuit Judge.

---

On November 8, 2005, at 9:50 a.m., Sergeant Paul Mangelson, a Utah Highway Patrol Trooper who had been with the Highway Patrol for nearly 40 years, was patrolling Interstate 15 in Utah when he stopped a vehicle which, according to the Trooper, was traveling 82 miles per hour in a 75 miles per hour zone. The vehicle stopped by the Trooper was being driven by a Ronald G. Doss, hereinafter referred to as the defendant. After starting his video camera and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

turning on a wireless microphone that he wore, Sergeant Mangelson approached the stopped vehicle from the passenger's side and asked the defendant for his driver's license and car registration, which the latter produced. The Trooper informed the defendant why he had been stopped, i.e., speeding, and inquired about his travel plans. Upon speaking to the defendant, the officer immediately noticed the defendant's bloodshot eyes, his extreme nervousness, and his "withdrawn look." The Trooper commented upon the defendant's bloodshot eyes and asked him if he had been drinking the night before or had any drugs or medication that morning. Defendant denied using drugs or alcohol and said he had a poor night's sleep and had been driving since 5:30 a.m. that morning. The Trooper then asked the defendant to step out of the car in order to see how he was "navigating," and he performed a sobriety test on defendant, i.e. an "eye convergence" test, which test defendant failed. In any event, at that particular moment the Trooper told the defendant that he thought the defendant had been smoking marijuana, which the defendant denied. Also at that point in time, the defendant denied the Trooper's request to search his car. The two then sat in the Trooper's car while a computer check was being run. Once in the car, the Trooper noticed that the defendant smelled like marijuana and defendant had a green residue on his tongue. Next, the Trooper performed some additional roadside sobriety tests which the defendant also failed. The defendant again refused to allow the Trooper to search his vehicle, whereupon the Trooper arrested the

defendant for driving while impaired, the Trooper suspecting that the defendant had been using marijuana. The ensuing inventory search of the defendant's car disclosed a baggie of marijuana, a marijuana pipe in the console of the vehicle, several pounds of methamphetamine inside a stuffed bear, scales, more baggies of marijuana, and three bottles of methamphetamine in a duffel bag. A subsequent urine test of the defendant revealed the presence of marijuana.

Based on the foregoing sequence of events, the defendant was charged in the United States District Court for the District of Utah with one count of possession of 500 grams or more of a mixture containing methamphetamine with an intent to distribute in violation of 21 U.S.C. § 841(a)(1). Prior to trial, the defendant moved to suppress the use at trial of the contraband found in the search of his vehicle and his statements to Trooper Mangelson on the grounds that such were outside of and beyond the scope of his detention for the speeding infraction. According to the defendant, his continued detention was not based on a "reasonable, articulable" suspicion on the part of Trooper Mangelson that the defendant was driving while impaired, and thus defendant's Fourth Amendment rights had been violated. Specifically, defendant's position was that though his initial detention based on speeding was reasonable, his continued detention became unreasonable when the Trooper ordered him to exit his vehicle. After an evidentiary hearing, the District Court denied defendant's motion to suppress. Later, a two-day jury trial was held and the jury found the defendant guilty of the

crime charged and he was later sentenced to 144 months imprisonment. A timely Notice of Appeal was filed.

On appeal, present counsel, who did not represent the defendant at the suppression hearing, raises one issue which he frames as follows:

> Whether Sergeant Mangelson had a reasonable, articulable suspicion of criminal behavior to justify expanding the stop beyond its initial scope regarding a speeding violation.

The District Court, after an evidentiary hearing at which Trooper Mangelson was the only witness, denied the motion to suppress, holding that the Trooper had a reasonable, articulable suspicion that the defendant was driving while impaired, which would justify an extension of the scope and duration of his initial detention for speeding.

When reviewing a District Court's denial of a motion to suppress we, on appeal, accept the District Court's findings of facts unless clearly erroneous and view those facts in the light most favorable to the Government. *See United States v. Caro*, 248 F.3d 1240, 1243 (10th Cir. 2001). Judging the credibility of Trooper Mangelson, for example, and determining his credibility and drawing reasonable inferences therefrom are within the province of the District Court, unless clearly erroneous. *United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir. 1997). However, the District Court's ultimate determination of reasonableness under the Fourth Amendment is reviewed *de novo*. *United States v. Caro*, 248 F.3d at 1243.

In denying the defendant's motion to suppress, the District Court entered a 12-page order considering in commendable detail Trooper Mangelson's testimony. *See United States v. Doss*, 2006 WL 1409132 (D. Utah). At the outset of its order denying the defendant's motion to suppress, the District Court commented upon Trooper Mangelson's background and training as follows:

> During the course of his nearly forty-year career, Sergeant Mangelson has conducted thousands of investigations involving intoxicated drivers, including hundreds of investigations of drivers under the influence of controlled substances, such as marijuana. (Transcript of March 30, 2006 Evidentiary Hearing [hereinafter "Tr."] 4-5.) Additionally, Sergeant Mangelson has received ongoing and extensive training regarding the physiological effects of controlled substances on the human body. (Id. at 5-10.) Sergeant Mangelson is trained to identify physical indicators that suggest use of a controlled substance, and is also trained to perform field tests designed to reveal impairment caused by controlled substances. (Id.)

In that same order, the District Court then went on and spoke as follows:

> The record evidence shows that Sergeant Mangelson expanded the scope of the traffic stop almost immediately after first making face-to-face contact with Mr. Doss. Sergeant Mangelson, when initially speaking with Mr. Doss through the passenger-side window about the reason for the traffic stop, commented on Mr. Doss's eyes and asked if he had been drinking only moments after beginning the conversation. (*See* Gov. Ex. 1.) Sergeant Mangelson testified that upon speaking with Mr. Doss, he immediately noticed that Mr. Doss (1) possessed a detached, zombie-like look; (2) had glassy, pink, bloodshot eyes; and (3) was extremely nervous. (Tr. 12-14.) The videotape of the traffic stop additionally shows that Mr. Doss was speaking

-5-

quite rapidly (*See* Gov. Ex. 1.)  Sergeant Mangelson
testified that each of these observations is consistent
with the conclusion that Mr. Doss was impaired.
(Tr. 12-14.)  (Emphasis added.)

In sum, our study of the record, including the video, leads us to conclude

that the District Court did not err in denying defendant's motion to suppress.  We

are in accord with the District Court's order denying defendant's motion to

suppress.  Our *de novo* review of the record leads us to conclude, as did the

District Court, that Trooper Mangelson had a reasonable suspicion that the

defendant was driving while impaired.

In support of our resolution of the present controversy, see, for example*,*

*United States* v. *Villa-Chaparro*, 115 F.3d at 801, where we spoke as follows:

An investigative detention may be expanded beyond its
original purpose, however, if during the initial stop the
detaining officer acquires "reasonable suspicion" of
criminal activity.

In determining whether the officer's observations during the course of the stop

rise to an objectively reasonable suspicion of criminal activity, we examine the

totality of the circumstances.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Under this approach, reasonable suspicion may exist even if each of the facts

noted by law enforcement is individually susceptible to an innocent explanation.

*Id.* at 277.

In this same general regard, see *United States v. Sharpe*, 470 U.S. 675

(1984), where the Supreme Court indicated that an individual reasonably

suspected of criminal activity may be detained for a period of 20 minutes, when the detention is necessary for the law enforcement officer to conduct a limited investigation of the suspected criminal activity.

In *Sharpe,* 470 U.S. at 686, the Supreme Court also cautioned courts not to engage in "unrealistic second-guessing" when assessing the acts of a policeman in a "swiftly developing situation."

Finally, we do not believe that *United States v. Wald*, 216 F.3d 1222 (10th Cir. 2000), relied on by the defendant, where we <u>reversed</u> a district court's denial of a motion to suppress, controls the outcome of the present case. The facts in the present case are different from those in *Wald*. The issue in the present case is also different. And, of course, the fact that Trooper Mangelson was involved in both cases is only coincidental and not relevant to a resolution of the present case.

Judgment affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge