**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

GEORGE ALLEN LIVINGSTON,

     Defendant - Appellant.

No. 10-6192
(D.C. No. 5:08-CR-00107-D-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

     Do police officers violate the Fourth Amendment when they search a motel room after receiving consent from someone who had been staying in the room the last two days? The district court said no and we agree.

     On the night of January 11, 2008, the Oklahoma City police department received a tip. The tipster said a person named "George" (later identified as George Livingston) had committed robberies in the area and was staying in Room 219 or 220 of the Oak Tree Inn. Officers soon arrived at the motel. After learning from the desk clerk that Room 220 was rented out and Room 219 wasn't,

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

they knocked on the door of Room 220. A man opened it and identified himself as Angel Rivera. He told the officers the room wasn't his, but that he had been staying there for at least two days. The officers informed Mr. Rivera that they were looking for George, and Mr. Rivera told them he was in a back bedroom with his girlfriend. The officers asked Mr. Rivera if they could enter the room to look for him. Mr. Rivera said yes.

On entering, the officers walked toward the back bedroom. Through a small opening in the door, one of the officers saw a woman sitting on the bed (later identified as Cary Adams). The officer knocked and asked if George was there. Ms. Adams whispered that he was "in the closet" located in the back bedroom, pointed in that direction, and stepped outside the bedroom to allow the officers in. The officers entered the bedroom, then the closet, and they found Mr. Livingston hiding under a pile of clothes. One of the officers seized a gun found in an unzipped duffle bag in the closet. Also in the bag, the officer found a shaving kit containing bills that he recognized as counterfeit. Mr. Livingston was taken into custody and a few days later he confessed to producing counterfeit money and possessing a stolen gun.

All this led to Mr. Livingston being charged with two counts of possessing counterfeit notes in violation of 18 U.S.C. § 472, and one count of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). In the district court, Mr. Livingston sought to suppress the evidence on which all these charges rested.

He argued that the gun and counterfeit money seized in the motel room, along with his subsequent confession, were fruits of a search that violated the Fourth Amendment. The district court rejected these arguments and Mr. Livingston soon stood convicted of all the charges against him. On appeal, Mr. Livingston challenges only the district court's Fourth Amendment rulings.

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *See United States v. Martin*, 613 F.3d 1295, 1299 (10th Cir. 2010) (internal quotation omitted). This presumption applies not just to homes but also to temporary residences like motel rooms. *See United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). Even so, a warrantless entry does not run afoul of the Fourth Amendment if an officer obtains consent from a person who has "mutual use of the property by virtue of joint access" or "control for most purposes over it." *See United States v. Rith*, 164 F.3d 1323, 1329-30 (10th Cir. 1999). Neither is the Constitution offended if the officer receives consent from a person he reasonably but mistakenly believes possesses such authority, under the doctrine of "apparent authority." *See Illinois v. Rodriguez*, 497 U.S. 177, 186-87 (1990).

Mr. Livingston argues that Mr. Rivera lacked apparent authority to consent to the officers' initial entry, their intrusion into the outer motel room. We disagree. Mr. Rivera answered the officers' knock on the door and then told them he had been staying in the room for at least two days. This fact, we hold, is

enough to establish the officers' reasonable belief that he had mutual use or control of at least the outer motel room. Staying in a motel room the night before, we have previously said, weighs in favor of a person's authority to consent to a search. *See Kimoana*, 383 F.3d at 1225 n.7. And this is hardly surprising. The fact that a person stays for one or two or more nights suggests he is no mere visiting guest of the motel lodger but is a lodger himself who possesses a significant degree of dominion over the room. And, more to the point, we cannot say an officer would be *unreasonable* to think so. To be sure, Mr. Rivera told the officers he hadn't rented the room. But people who aren't registered with a motel often share rooms with those who are — mutually using and sharing control over the room — so this fact cannot negate the officers' reasonable belief in Mr. Rivera's control over the premises. *See United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974) ("The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes.").

Mr. Livingston suggests that *United States v. Cos* teaches otherwise. 498 F.3d 1115 (10th Cir. 2007). But it doesn't. In *Cos*, this court held that officers lacked reason to believe that the person who answered the door of an apartment home possessed adequate authority to consent to a search. *See id*. at 1117. The officers there, however, had no idea who that person was or what relationship she

had to the apartment. *See id*. at 1118. They made no inquiry and, for all they knew, she could have been only a neighbor, friend, or repairman. In our case, by contrast, the officers *did* make an inquiry and Mr. Rivera told them that he had stayed in the motel room for at least two days. And whether that's enough to establish apparent authority over a house or apartment, it *is* enough to establish apparent control over a motel room. Hotels and motels are abodes for the transient and control over them is usually possessed by the transient, a fact of life our case law has hardly ignored. *See, e.g.*, *United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1231 (10th Cir. 1998) (person opening motel room door who traveled with defendant had authority to consent); *Kimoana*, 383 F.3d at 1225 (person opening motel room door who stayed previous night had authority to consent).

Retreating, Mr. Livingston suggests that, even if the officers' initial entry of the outer motel room was legal, the search of the separate, inner bedroom and closet was not. Because there was no evidence that Mr. Rivera ever accessed the bedroom or closet, he says, Mr. Rivera could not give valid consent to search those areas and no reasonable officer could think otherwise. But none of this helps Mr. Livingston's cause. Even assuming without deciding that Mr. Rivera lacked apparent authority over the inner bedroom and closet, someone else did: Cary Adams. On entering the outer motel room, the police learned from Mr. Rivera that Ms. Adams was Mr. Livingston's girlfriend who stayed in the

bedroom with him. Under these circumstances, there is little question that the officers reasonably believed she had mutual use of the bedroom and closet and so the lawful authority to give consent to search those areas. *See United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993). So obvious is this that Mr. Livingston's counsel conceded at oral argument that Ms. Adams had authority to consent to a search of the bedroom.

Of course, this raises the question whether Ms. Adams actually gave consent. But the answer here is clear. Before entering the bedroom, the officers asked Ms. Adams where Mr. Livingston was located. She responded "in the closet," pointed in that direction, and stepped out of the bedroom to let the officers in. From this exchange, "reasonable law enforcement officer[s] would have understood" that Ms. Adams consented to the search of the bedroom and closet. *United States v. Flores*, 48 F.3d 467, 468-69 (10th Cir. 1995); *see also United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994). While she did not expressly tell the officers to come in, Ms. Adams's "non-verbal conduct" in pointing to the closet and stepping out of the bedroom constituted a voluntary consent to search. *See*, *e.g.*, *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999).

Mr. Livingston attempts one last stand. Even if the officers had consent to search the bedroom and closet, he says, their search of the duffle bag containing the gun and counterfeit bills exceeded the scope of that consent. We don't

disagree. After all, Mr. Rivera and Ms. Adams only consented to a search for the *person* of Mr. Livingston. Unless Mr. Livingston were a contortionist, no reasonable person would conceive of him hiding in a duffle bag. But all this is ultimately no better than beside the point. The district court admitted evidence of the gun and counterfeit bills *not* because anyone consented to the search of the duffle bag containing them. Instead, the court held that, because the officers were lawfully present in the room and closet, their seizure of the gun found in the unzipped duffle bag was justified under the plain view doctrine. *See United States v. Sells*, 463 F.3d 1148, 1161 (10th Cir. 2006). The court also held that the search of the duffle bag containing the counterfeit money was justified by a search incident to Mr. Livingston's arrest. *See United States v. Sanchez*, 555 F.3d 910, 920 (10th Cir. 2009). And as to these findings and holdings, Mr. Livingston mounts no challenge.

The judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge