**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JESUS CORONADO,

    Defendant - Appellant.

No. 24-2177
(D.C. No. 2:23-CR-00915-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS** and **McHUGH**, Circuit Judges, and **VRATIL**, District Judge.[**]

_____

Officers sought to execute an arrest warrant for Jesus Coronado. They spotted his truck parked outside a multi-residential housing complex, but Coronado wasn't there. So they started surveilling the complex.

Two days later, an officer saw someone matching Coronado's description in the complex's driveway. As the officer approached, the man fled. A car

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Kathryn H. Vratil, U.S. District Judge, United States District Court for the District of Kansas, sitting by designation.

obstructed the officer's view, but he thought he saw Coronado enter a small, standalone housing unit near the back of the complex.

More officers soon arrived and surrounded the unit. On officers' orders, three people exited the building. None were Coronado, and all three denied that Coronado was inside. In fact, one of them said that Coronado had fled behind the building.

Still, officers believed Coronado might be inside. So one officer started drafting a search warrant. Another officer entered a neighboring yard and climbed a concrete fence behind the unit. From there, he spotted a gun on the unit's roof.

Meanwhile, the unit's lessee gave officers permission to "go in" and look for Coronado. But officers chose to wait until a judge approved a search warrant. Soon after, as SWAT officers prepared to enter the unit, the police received a call about a man hiding in a nearby yard. Officers responded to the call, found Coronado, and arrested him. They then retrieved the gun from the unit's roof.

Based on that gun, a federal grand jury charged Coronado with possessing a firearm as a felon. He moved to suppress the gun, but the district court denied his motion. The court concluded that when officers retrieved the gun from the roof, they had acted within the scope of the lessee's consent and lawfully seized the gun under the plain-view doctrine. Later, a jury convicted Coronado, and the court sentenced him to 120 months' imprisonment.

Coronado timely appealed. He challenges the district court's suppression decision, arguing that the officers' climbing onto the unit's roof exceeded the scope of the lessee's consent.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. The district court did not clearly err by finding that the officers acted within the scope of consent. Thus, the court correctly denied Coronado's motion to suppress.

## BACKGROUND

### I.    Factual Background

On December 11, 2021, Jesus Coronado's ex-girlfriend called the Las Cruces Police Department.[1] She told police that Coronado had parked beside her in a white truck and threatened her with a gun. When she drove away, Coronado followed and rear-ended her. So officers secured an arrest warrant charging Coronado with aggravated assault.

Soon after, officers saw the white truck—which they determined was stolen—parked at 1425 Durazno Street in Las Cruces. That address held a two-unit house and a casita—a small, standalone housing unit. The standalone unit was a one-story building with a raised platform that provided access to the roof.

---

[1] For most of its factual findings, the district court cited only the government's brief. *See United States v. Coronado*, No. 23-cr-00915, 2023 WL 8359948, at *1–2 (D.N.M. Dec. 1, 2023). Yet Coronado doesn't challenge these facts. As a result, our factual background relies largely on the district court's order.

3

Officers approached and ordered everyone out of the standalone unit. But only the unit's lessee, her two children, and Coronado's sister were home. The lessee told officers that she didn't know that the truck was parked outside. She also told them that Coronado hadn't recently been by the unit.

Undeterred, officers started surveilling 1425 Durazno Street. Their effort paid off. Just two days later, Officer Joshua Appelzoller saw someone matching Coronado's description in the driveway. Officer Appelzoller approached and ordered the man to stop. But the man ducked behind a car and, according to Officer Appelzoller, appeared to enter the standalone unit.

Once backup arrived, officers surrounded the unit and ordered everyone out. Three people—the unit's lessee, Coronado's sister, and a man—exited. But the man wasn't Coronado.

The man told officers that he was there to buy a trailer from Coronado. The man also repeatedly told them that Coronado hadn't gone inside but had instead run behind the building. For their part, the lessee and Coronado's sister each said that they had been asleep and didn't know that Coronado had been at the complex at all. But they, too, told officers that no one else was in the unit.

Still, officers believed that Coronado might be inside. So one officer started drafting a search warrant for SWAT officers to enter the building to look for him. The lessee—who was now handcuffed in the back of the search-warrant affiant's vehicle—then gave officers permission to "go in" the unit to

look for Coronado.[2] Ex. 3_Munoz at 1:04:56–1:05:23. But they chose to wait until a state-court judge issued a warrant.[3]

Meanwhile, another officer had entered a neighboring yard and climbed onto a concrete fence behind the unit. There, he used his flashlight to illuminate the area for a surveillance drone. That's when he saw a handgun on the unit's roof. He immediately reported this to the other officers. When they told the lessee about the gun, she denied that it was hers.

As SWAT officers prepared to enter the unit, police received a call about a man hiding in a nearby yard. Officers responded to that area, identified Coronado, and arrested him. About twenty minutes later, they retrieved the gun from the unit's roof.

## II.    Procedural History

A magistrate judge signed a criminal complaint charging Coronado, a felon, with possessing the firearm that officers found on the roof, in violation of 18 U.S.C. § 922(g). Later, a federal grand jury similarly indicted him for possessing a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

---

[2] Though the lessee volunteered her consent, she did so only after officers mentioned the possibility of using "chemical munitions," which they warned might "destroy" the unit. *See* Ex. 3_Munoz at 1:04:56–1:05:18.

[3] In his suppression motion, Coronado challenged the search warrant, arguing that it contained material misstatements and omissions. But he doesn't make those arguments on appeal.

Coronado moved to suppress the gun, but the district court denied his motion. *United States v. Coronado*, No. 23-cr-00915, 2023 WL 8359948, at *1 (D.N.M. Dec. 1, 2023). The court concluded that officers had properly seized the gun under the plain-view doctrine. *Id.* at *3–4. As part of that analysis, the court found that the lessee's consent to search "covered any officer access to [the unit's] roof, an obvious place for law enforcement officers to search for a suspect believed to be hiding from the police." *Id.* at *4. A jury later convicted Coronado, and the district court sentenced him to 120 months' imprisonment.

Coronado timely appealed. He challenges the district court's suppression decision, arguing that when officers climbed onto the unit's roof, they exceeded the scope of the lessee's consent. He also argues that officers lacked consent to climb onto the roof because the lessee's consent ended once they arrested him.

## STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review de novo the "[u]ltimate determinations of reasonableness concerning Fourth Amendment issues and other questions of law." *United States v. Cates*, 73 F.4th 795, 805 (10th Cir. 2023) (citation omitted). But "we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous." *Id.* (citation modified). A factual finding "is clearly erroneous only if it is without factual support in the record or if, after reviewing the evidence, we are left with a definite and firm conviction that a

6

mistake has been made." *United States v. Mullins*, 164 F.4th 1179, 1188 (10th Cir. 2026) (citation modified).

Whether a search exceeded the scope of consent is a question of fact. *United States v. Pikyavit*, 527 F.3d 1126, 1129 (10th Cir. 2008). As a result, we review scope-of-consent findings for clear error.[4] *Id.* at 1129–30. But because the court decided the scope-of-consent question without holding an evidentiary hearing, Coronado argues that we should instead review the court's finding de novo.

We aren't convinced. Even when district courts have declined to hold evidentiary hearings on motions to suppress, we've still reviewed the courts' factual findings for clear error.[5] *See, e.g.*, *United States v. Mathews*, 928 F.3d

---

[4] At oral argument, Coronado argued that in deciding whether officers acted within the scope of consent, the district court had to answer a predicate legal question: "what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances." *See Pikyavit*, 527 F.3d at 1130 (citation omitted). Thus, he asks us to review the court's conclusion on that point de novo. Even assuming that Coronado didn't waive this argument, *see United States v. Malone*, 10 F.4th 1120, 1124–25 (10th Cir. 2021) (holding that "issues may not be raised for the first time at oral argument" (citation omitted)), we reject it. Coronado's view conflicts with *Pikyavit*, 527 F.3d at 1129–30, and *United States v. Pena*, 143 F.3d 1363, 1367–68 (10th Cir. 1998).

[5] We also note that Coronado never challenges the district court's decision not to hold an evidentiary hearing. *See generally United States v. Glass*, 128 F.3d 1398, 1408–09 (10th Cir. 1997) (holding that a district court must hold an evidentiary hearing on a motion to suppress only if the motion "raise[d] factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue" (citation modified)).

968, 974 (10th Cir. 2019); *United States v. Murray*, 844 F. App'x 39, 42 (10th Cir. 2021); *United States v. Grist*, 60 F.3d 837, *3–4 (10th Cir. 1995) (unpublished table decision).

Coronado gives us no good reason to stray from that standard of review here. For support, he relies on only *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019). There, we held that when a district court denies a 28 U.S.C. § 2255 motion without holding an evidentiary hearing, we review the court's factual findings de novo. *Id.* at 1096–97. But *Bowen* considered the standard of review for decisions denying § 2255 motions—not motions to suppress. *See id.* And Coronado hasn't presented any argument about why that context should inform this one. Thus, we still review this district court's scope-of-consent finding for clear error, meaning we will affirm unless the court clearly erred in concluding that officers acted within the scope of consent. *See Pikyavit*, 527 F.3d at 1129–30.

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Except for "a few carefully established exceptions," it "is presumptively unreasonable" for officers to search a home without a warrant. *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012) (citation omitted). "Voluntary consent to search is one such exception." *Id.* (citation omitted). When "officers

rely upon consent to justify a warrantless search, the scope of the consent determines the permissible scope of the search." *Pikyavit*, 527 F.3d at 1130 (citation omitted).

The scope of consent "is generally defined by its expressed object." *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Pikyavit*, 527 F.3d at 1131. To determine the scope of consent, we use an objective-reasonableness test. *Pikyavit*, 527 F.3d at 1130. This test asks "what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances." *Id.* (citation omitted); *see also United States v. Kimoana*, 383 F.3d 1215, 1223 (10th Cir. 2004) (holding that the scope of consent depends on the totality of the circumstances).

It is also presumptively unreasonable for officers to seize evidence without a warrant. *See Groh v. Ramirez*, 540 U.S. 551, 559 (2004). But this rule has exceptions, too, including the plain-view doctrine. *See United States v. Johnson*, 43 F.4th 1100, 1110 (10th Cir. 2022). That doctrine applies when "(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent[,] and (3) the officer had a lawful right of access to the object." *Id.* (citation modified).

Here, the district court concluded that officers had consent to be on the unit's roof and that they properly seized the gun under the plain-view doctrine. *Coronado*, 2023 WL 8359948, at *3–4. For the doctrine's first factor, the court

found that the officer had a neighbor's permission to climb the fence behind the unit. *Id.* at *3. So the officer was lawfully in a position to view the gun. *See id.* For the second factor, the court concluded that because officers sought to arrest Coronado for "a crime involving a firearm," the gun's incriminating nature was immediately apparent. *Id.* And finally, for the third factor, the court found that because the roof was within the scope of consent, officers were legally entitled to access the gun. *See id.* at *3–4.

On appeal, Coronado doesn't dispute that officers received the lessee's consent to search inside the unit. Nor does he attack the district court's conclusions on the first two prongs of the plain-view doctrine. Rather, he argues that, by going on the unit's roof, officers exceeded the scope of consent. He also argues that the lessee's consent ended once officers arrested him.

If officers lacked consent or otherwise exceeded its scope, then they would have lacked "a lawful right of access to the" gun. *See Johnson*, 43 F.4th at 1110 (citation omitted). Thus, the lawfulness of both the search and the seizure turns on the lessee's consent.[6] *See generally United States v. Sanchez*, 89 F.3d 715, 718–19 (10th Cir. 1996) (discussing consent and the plain-view doctrine).

---

[6] We note that the government doesn't rely on the community-caretaking exception to justify the seizure. *See generally United States v. Chavez*, 985 F.3d 1234, 1243 (10th Cir. 2021) (explaining that officers can seize weapons without a warrant if necessary "to protect the public from the possibility that a [firearm] would fall into untrained or perhaps malicious hands").

I.      **Scope of Consent**

The lessee gave officers permission to "go in" the unit to look for Coronado. Ex. 3_Munoz at 1:04:56–1:05:23. Coronado argues that "a typical reasonable person would understand that the police had only been given permission to search *inside* the house—not to climb on top of it." Op. Br. at 13.

The district court disagreed, finding that the lessee's consent "covered any officer access to her roof." *Coronado*, 2023 WL 8359948, at *4. Focusing on the search's object—to find Coronado—the court found that the roof was "an obvious place for law enforcement officers to search for a suspect believed to be hiding from the police." *Id.* It also highlighted that the lessee "never g[a]ve officers limiting instructions regarding access to her roof." *Id.* So the court ruled that the roof was within the scope of her consent. *Id.*

That finding wasn't clearly erroneous. Our decision in *United States v. Pena*, 143 F.3d 1363 (10th Cir. 1998), is instructive. There, the defendant let officers "look in" his motel room. *Id.* at 1368. The district court found that officers, who were looking for drugs, acted within the scope of consent when they entered the room, removed a bathroom ceiling tile, and searched above it. *Id.*

Relying on three factors, we affirmed under clear-error review. *Id.* First, we emphasized that the defendant didn't object during the search. *Id.* Second, we considered the particular language officers used, explaining that "we have consistently held that similarly phrased requests for consent to search

11

are requests for a full search of the premises." *Id.* And third, we considered the object of the search, explaining that by "consent[ing] to a search for drugs, [the defendant] consented to a search of any area in the motel room where one might hide drugs," "including the space above the bathroom ceiling." *Id.*

As in *Pena*, we hold that the district court here didn't clearly err by finding that the lessee's consent allowed "a full search" of the unit, including its roof. *See id.* In fact, all three factors from *Pena* support the court's conclusion. Starting with the language used to consent to the search, we consider each factor in turn.

## A.    Language Used

In *Pena*, officers asked to "look in" the defendant's motel room, to which the defendant responded, "go ahead." *Id.* As we noted in *Pena*, we've interpreted similar language as allowing "a full search of the premises." *Id.* For example, we've held that giving an officer consent to "scout around" a car authorized "a full search," including underneath it. *See United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997); *see also United States v. Lyons*, 510 F.3d 1225, 1241 (10th Cir. 2007) (holding that consent to "look in the back" of a car "rendered the entire rear portion of [the defendant's] vehicle, including the rear part of its undercarriage and the spare tire attached thereto, fair game"). Similarly, we've held that consent to "look in" a car allowed an officer to lift up carpeting in the trunk. *See United States v. McRae*, 81 F.3d 1528, 1532, 1537–38 (10th Cir. 1996).

12

Here, the lessee used similar language to that used by the *Pena* defendant in granting consent. The *Pena* defendant gave officers permission to "look in" his motel room, 143 F.3d at 1368, while the lessee gave officers permission to "go in" the unit. So like in *Pena*, because the lessee allowed officers to "go in" the unit, a reasonable person could think that the lessee authorized "a full search of the premises," including the roof. *See id.*; *see also United States v. Torres*, 663 F.2d 1019, 1027 (10th Cir. 1981) (noting that "permission to search contemplates a thorough search").

The cases that Coronado cites don't convince us otherwise. He points to cases like *United States v. Wald*, 216 F.3d 1222 (10th Cir. 2000), and *United States v. Livingston*, 429 F. App'x 751 (10th Cir. 2011). In *Wald*, we affirmed the district court's finding that the defendant's consenting to "a quick look" inside his vehicle didn't allow officers to search the trunk. 216 F.3d at 1228–29. And in *Livingston*, we reasoned that consent to search a motel room for a person didn't allow officers to search a duffel bag found inside the room. *See* 429 F. App'x at 754.

Those cases are distinguishable. In *Wald*, the district court found that the defendant had limited his consent "to a quick look inside the passenger compartment." 216 F.3d at 1229; *see also id.* at 1225. Here, though, the district court never found that the lessee limited her consent to a certain part of the unit. Instead, she "gave a general authorization to search" the unit for Coronado. *See id.* at 1228 (citation modified). And in *Livingston*, the officers

13

exceeded the scope of consent by searching areas where a person couldn't physically hide. *See* 429 F. App'x at 754 ("Unless [the defendant] were a contortionist, no reasonable person would conceive of him hiding in a duffle bag."). But here, officers did no such thing; instead, they climbed onto the roof, an area "large enough to accommodate" a person. *See United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994).

### B.    Objections and Limitations

An individual's failure to object during a search "may be considered an indication that the search was within the scope of the consent." *Pena*, 143 F.3d at 1368 (citation omitted). Similarly, "[a] defendant's failure to limit the scope of a general authorization to search is [also] a factor indicating the search was within the scope of consent." *Pikyavit*, 527 F.3d at 1131 (citation modified).

Here, the lessee never objected to the search or otherwise limited her consent.[7] So this factor, too, supports the district court's finding that officers acted within the scope of consent when they climbed onto the unit's roof.

In *Pikyavit*, the defendant—who was in jail—consented to officers searching his house for evidence of a fight. *Id.* at 1128–29. But when officers got to the house, the doors were locked. *Id.* at 1129. They went inside anyway. *Id.*

---

[7] The record is unclear whether the lessee saw officers climb onto the roof. But we've held that even when a consenter wasn't present to object, we may still consider the consenter's failure to "carefully delimit" the search's scope. *See Pikyavit*, 527 F.3d at 1134–35.

We affirmed the district court's finding that officers acted within the scope of consent, in part because the defendant didn't "expressly condition the search of his home on the police finding the doors unlocked." *Id.* at 1131. Indeed, because the defendant "gave the officers general consent to search his home for evidence of [a] fight[,] [w]ithout words of limitation or condition, the reasonable inference . . . was he had impliedly consented to the search of his home even if the doors were locked." *Id.*

Here, too, the lessee gave officers "general consent" to search the unit for Coronado. *See id.* And "[w]ithout words of limitation or condition," the district court did not clearly err in concluding that she "had impliedly consented to" officers climbing onto the unit's roof. *See id.*

Coronado, though, argues that the lessee didn't need to limit her consent because "the permission she granted—to go *inside* the house—did not contemplate [officers] climbing onto the roof in the first place." Op. Br. at 18–19. But as explained, a reasonable person could think that by letting officers "go in" the unit, the lessee allowed a full search of the premises, including its roof.

Coronado also emphasizes that officers repeatedly asked the lessee whether Coronado was inside and ordered Coronado to exit the unit. In his view, this "context" supports that the lessee limited the search to the unit's interior. *Id.* at 17–18.

But the circumstances weigh against this view. We've held that "the onus" is on the consenter "to carefully delimit the scope of the search." *Pikyavit*, 527 F.3d at 1134. And soon after the lessee consented to a full search of the unit, officers told her about the gun on the roof. Yet even then, she didn't tell officers that they couldn't search that part of the premises.

## C.    Object Sought

The object of a search generally defines the scope of consent. *Jimeno*, 500 U.S. at 251. Here, the lessee allowed officers to "go in" the unit to look for Coronado. Consent to search for a person extends to those areas where a person could be hiding. *See, e.g.*, *Mains*, 33 F.3d at 1227 (holding that consent to search an apartment for a person let officers search "any area in the apartment large enough to accommodate" a person); *United States v. Comstock*, 531 F.3d 667, 676 (8th Cir. 2008) (holding that consent to search a house for other people let officers search every room in the house, including the basement). And a reasonable person could conclude that someone trying to evade police might hide on a roof. So this factor also supports the district court's scope-of-consent finding.

In Coronado's view, under the circumstances, it wasn't reasonable for officers to think that he was on the roof. That's because they "had already viewed the roof and seen that no one was there." Op. Br. at 13. True enough, officers used a drone to view the roof. And the officer who spotted the firearm

16

from atop the concrete fence also viewed the roof and saw that Coronado wasn't there.

Still, we aren't convinced. Coronado's argument ignores that the object of the search was a person who could move at any time. So officers' having viewed the roof beforehand didn't mean they exceeded the scope of the search later by climbing onto the roof.

*    *    *

In sum, the district court didn't clearly err by finding that when officers searched the unit's roof, they acted within the scope of the lessee's consent. Thus, officers lawfully climbed onto the roof and, under the plain-view doctrine, lawfully seized the gun.

## II.    Duration of Consent

Coronado also argues that officers lacked consent for the search because, by the time officers retrieved the gun, they had found Coronado elsewhere and arrested him.

But Coronado waived this argument by raising it for the first time on appeal. A defendant must raise motions to suppress, if any, before trial. *See* Fed. R. Crim. P. 12(b)(3)(C). And unless he can show good cause, he waives any arguments "not raised in [a] suppression motion." *United States v. Warwick*, 928 F.3d 939, 944 (10th Cir. 2019).

Coronado doesn't try to show good cause. Instead, he says he preserved this argument by generally contending in his suppression motion that the lessee

didn't consent to a search of her roof. He also argues that the issue was preserved because the district court resolved it. *See generally United States v. Sweet*, 107 F.4th 944, 956 (10th Cir. 2024) ("When the district court sua sponte raises and explicitly resolves an issue of law on the merits, the appellant may challenge that ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in district court." (citation modified)).

We disagree on both points. First, generally challenging the scope of consent didn't preserve Coronado's specific argument that the lessee's consent ended when officers arrested him. Whether officers exceeded the scope of consent and whether they exceeded the duration of consent are separate questions. *See United States v. Carbajal-Iriarte*, 586 F.3d 795, 801–03 (10th Cir. 2009). And Rule 12 waiver applies "to the failure to include a particular argument in the [suppression] motion." *Warwick*, 928 F.3d at 944 (citation omitted).

Second, the district court never decided whether the lessee's consent ended when officers found Coronado. Instead, it focused only on whether the officers acted within the scope of consent when they climbed onto the roof. *See Coronado*, 2023 WL 8359948, at *3–4.

Thus, because Coronado waived his end-of-consent argument, we decline to consider it.[8]

## CONCLUSION

For these reasons, we affirm the district court's denial of Coronado's motion to suppress.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[8] Coronado also argues that if we rule in his favor, we should vacate his conviction. And the government separately argues that Coronado lacked standing to challenge the search. Because the district court didn't clearly err in finding that officers hadn't exceeded the scope of the lessee's consent, we need not address these arguments.