**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

─────────────────────────────────

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NATHANIEL DONALD JOHNSON,

    Defendant - Appellant.

No. 21-2058

─────────────────────────────────

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:18-CR-00220-JB-1)**

─────────────────────────────────

Hans Erickson, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant – Appellant.

Taylor F. Hartstein, Assistant United States Attorney, Albuquerque, New Mexico (Fred J. Federici, United States Attorney, with him on the brief), for Plaintiff – Appellee.

─────────────────────────────────

Before **MORITZ**, **EBEL**, and **KELLY**, Circuit Judges.

─────────────────────────────────

**MORITZ**, Circuit Judge.

─────────────────────────────────

    Nathaniel Johnson was arrested following an encounter on a Greyhound bus with Special Agent Jarrell Perry. Law enforcement then discovered two packages of methamphetamine in Johnson's backpack, and Johnson gave several incriminating

statements. The district court denied Johnson's motion to suppress the physical evidence and his statements.

Appealing that ruling, Johnson argues that (1) there was no probable cause to arrest him; (2) Perry illegally searched a bundle of clothing in his backpack while on the bus following the arrest; and (3) Perry conducted an illegal search of the backpack and bundle later at the DEA office. We hold that Perry had probable cause to arrest Johnson and to seize the bundle of clothing and backpack. But we further hold that while seizing the items from the bus, Perry conducted an illegal search of the bundle by reaching inside Johnson's open backpack and feeling the bundle in an exploratory manner. Then later, at the DEA office, still without a warrant, Perry conducted a second illegal search of the backpack and the bundle. And contrary to the government's position, the plain-view exception to the warrant requirement cannot apply because at neither point in time were the contents of the bundle or backpack a foregone conclusion. Accordingly, we affirm in part, reverse in part, vacate Johnson's conviction and sentence, and remand for further proceedings.

## Background[1]

Johnson was traveling east on a Greyhound bus that stopped in Albuquerque for routine service. Perry, who had 19 years of drug-interdiction experience with the United States Drug Enforcement Agency (DEA), was working at the Albuquerque

---

[1] We take these facts from the suppression hearing and view them in the light most favorable to the district court's determination. *See United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005).

bus station. During the service stop, passengers were required to temporarily get off the bus. When Johnson got back on board, Perry was at the rear of the bus speaking with two other passengers about their travel; Task Force Officer Seth Chavez boarded behind Johnson and stood at the front of the bus.

Perry saw Johnson take an aisle seat three or four rows ahead of where he was standing. Johnson's backpack, which he had left on board while the bus was being serviced, was on the window seat next to him. As Perry questioned other passengers, he observed Johnson pick up the backpack and place it underneath the window seat, which Perry perceived as an attempt to hide the bag.

Perry then approached Johnson. Perry's firearm was not visible; he wore plain clothing, an Amtrak-branded cap, and an audio-recording device.[2] Positioned behind Johnson, Perry introduced himself as a police officer and showed his badge. Perry asked for permission to speak with him, and Johnson agreed. Perry's recording device captured their exchange.

Perry first asked Johnson about his travel plans, and Johnson replied that he was traveling from Arizona to Joplin, Missouri. At Perry's request, Johnson handed

---

[2] Perry testified that he owns both Greyhound and Amtrak hats, although he works for neither company. He said that he wore the Amtrak hat on the day in question because he "liked it" and that he did not think passengers would get the mistaken impression that he worked for Amtrak. R. vol. 2, 95. Yet Johnson testified that the hat confused him—making him think that Perry was with the bus company. In any event, Perry added that he no longer wears these hats while on duty because "various defense attorneys" had raised issues about them. *Id.* at 94.

his ticket to Perry, which had the (false) name Mike Johnson on it.[3] Perry returned the ticket and asked Johnson whether he had any identification on him; Johnson replied that he did not.[4] Perry asked Johnson the reason for his trip, and Johnson said he was going to Joplin for something related to probation, although he did not explain further. Perry then asked Johnson whether he was traveling with luggage. Johnson replied, "None at all." R. vol. 1, 102. Next, Perry asked if Johnson had anything "under the bus," and Johnson said, "No." *Id.* And a third time, Perry asked if Johnson had "[a]nything underneath [his] seat." Johnson again replied, "No." *Id.*

Perry testified that because he had seen Johnson place the backpack underneath the seat next to him, Johnson's denials that he had any luggage suggested that Johnson was attempting to "distance himself" from the backpack, which "possibly . . . contained contraband." R. vol. 2, 45.

Johnson then consented to a patdown of his person. After the patdown, Perry asked whether the bag under the seat next to Johnson's was his. After initially denying it was his, Johnson reversed course, confirmed it was, and added that the backpack contained clothing. Perry then asked, referring to the backpack, "You give me permission to search it for contraband, sir?" R. vol. 1, 103. Although the audio recording is not entirely clear, the district court concluded that Johnson replied, "Yeah, I am doing it." *Id.* at 104.

---

[3] Nothing in the record indicates that, at this point, Perry knew Johnson was traveling under a false name.

[4] Perry testified that Greyhound does not require passengers to present identification before traveling on its buses.

Johnson then removed the backpack from underneath the vacant window seat, placed it on the seat, opened it, and began to rummage through the bag's contents. Perry testified that, in his experience, individuals will conduct a "self-search" like this to conceal contraband and deflect officer concerns. R. vol. 2, 52. At this point, Johnson was still seated; Perry testified that Johnson angled his body to shield Perry's view of the bag, so Perry repositioned himself to get a better view of what Johnson was doing.

Perry then observed a black "oblong-shaped large bundle" "protruding" from some clothing. *Id.* at 137. Perry pointed to the bundle and asked Johnson, "[w]hat about inside this right here? Black bundle right there?" R. vol. 1, 104. Perry testified that in his experience, drug traffickers conceal "bundles of illegal narcotics inside sleeves, jackets, pants, shirts, [and] underwear." R. vol. 2, 56. This experience—together with the bundle's size, shape, and concealment method—led Perry to believe the bundle contained illegal narcotics. Perry asked Johnson what the bundle was, and Johnson did not respond. Without missing a beat, Perry said, "Okay, sir, I need you to go ahead and put your hands up here for me."[5] R. vol. 1, 104. Perry handcuffed Johnson and handed him over to Chavez, who escorted Johnson off the bus.

After Johnson was off the bus, Perry reached inside the open backpack and "felt th[e] bundle." R. vol. 2, 59. He testified that this contact confirmed his

---

[5] From the end of Perry's question about the bundle until Perry asked Johnson to put his hands up, under two seconds elapsed. But Johnson admitted that he did not respond to Perry's question.

suspicion about the bundle being illegal narcotics, explaining that the bundle was "very hard" and "a pretty large bundle." *Id.* at 60. He repeated that the bundle was "oblong shaped" and further testified that it had a "crinkling or kind of crushing feel." *Id.* at 134. Perry then put some clothing that had fallen out of the backpack back in, zipped it up, and took the backpack off the bus.

Perry and Chavez took Johnson and the backpack to the DEA office where, without a warrant, Perry searched the backpack. When he did, Perry saw for the first time that the bundle was a package wrapped in tinfoil that had been placed inside one of the legs of a pair of long underwear. Perry also discovered a second bundle. The bundles were weighed, and one of them field-tested positive for methamphetamine.

Also at the DEA office, Perry advised Johnson of his rights. Johnson waived his rights and told Perry that he believed the black backpack contained one bundle of marijuana, wrapped in aluminum foil, and that he was being paid $500 to transport the drugs.

The government charged Johnson with knowingly and intentionally possessing with intent to distribute over 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Johnson moved to suppress the methamphetamine and his statements. Relevant to this appeal, Johnson argued that (1) the drugs and statements should be suppressed because he was arrested and the items were seized without probable cause; (2) the items were searched without a warrant; and (3) his statements were fruit of the poisonous tree because they were obtained without purging the taint of the earlier illegal conduct. The district court conducted a

suppression hearing at which Johnson and Perry both testified to the facts detailed above. The district court found that Johnson exhibited a "lack of candor" and that "Perry [wa]s more reliable about the case's events." R. vol. 1, 99–100. After the hearing, Johnson filed a supplemental brief, adding additional arguments and authorities to his initial motion.

The district court issued a short, two-page order denying Johnson's motion to suppress. Johnson, at that point proceeding pro se, sought reconsideration of that order. Approximately five months after its initial order, the district court issued a more detailed order, explaining the rationale for its initial decision and denying reconsideration. It concluded, as relevant here, that (1) Perry had probable cause when he arrested Johnson and (2) Perry's warrantless search of Johnson's backpack was valid because it was a "foregone conclusion" that the backpack contained contraband. *Id.* at 126. Given this latter conclusion, the district court did not separately analyze whether Perry conducted a search of the backpack either on the bus or at the DEA office. And given its overall determination that no illegality occurred, the district court did not consider whether Johnson's statements warranted suppression as fruit of the poisonous tree.

Johnson then entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Johnson to ten years in prison and five years of supervised release. Johnson now appeals.

**Analysis**

"In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous" and review the overall question of reasonableness under the Fourth Amendment de novo. *United States v. Hammond*, 890 F.3d 901, 905 (10th Cir. 2018). In conducting our review, we "view the evidence in the light most favorable to the determination of the district court." *Santos*, 403 F.3d at 1124. "A district court's factual finding is clearly erroneous when it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *United States v. Morales*, 961 F.3d 1086, 1090 (10th Cir. 2020) (quoting *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013)).

**I.      Probable Cause to Arrest**

Johnson first argues that Perry lacked probable cause to arrest him. "A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." *United States v. Sanchez*, 13 F.4th 1063, 1072–73 (10th Cir. 2021) (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008)), *cert. denied*, 142 S. Ct. 842 (2022). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* at 1073 (quoting *Keylon*, 535 F.3d at 1216). The probable-cause standard "requires only a 'fair probability,' a standard understood to mean something more than a 'bare suspicion' but less than a

preponderance of the evidence at hand." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014) (quoting *United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011)). In considering the existence of probable cause, we view the "circumstances in their totality rather than individually," and we may not "arrive at probable cause simply by piling hunch upon hunch" or ignore those factors that "militate against" a finding of probable cause. *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004).

The district court concluded that Perry had probable cause to arrest Johnson when he first saw the black bundle of clothing in Johnson's backpack based on the following facts: (1) Perry saw Johnson place the bag underneath the seat next to him while Perry questioned other passengers; (2) Johnson lacked identification; (3) Johnson lied to Perry when he told him that he did not have luggage; (4) Johnson conducted a "self-search" of the backpack while attempting to obstruct Perry's view; (5) Perry saw the black bundle's "size and shape," which, based on his experience, led Perry to believe the bundle contained illegal narcotics; and (6) when Perry asked about the black bundle, Johnson, who had answered Perry's earlier questions, did not respond. R. vol. 1, 124. We discuss each fact in turn and then decide whether—taken together—they add up to probable cause. *See Valenzuela*, 365 F.3d at 897–901 (discussing facts individually before "consider[ing] the totality of the circumstances" to decide whether facts amounted to probable cause).

Johnson first challenges two facts: Perry's observation that Johnson placed the backpack underneath the seat next to him and Johnson's failure to produce

9

identification. On the first, the district court credited Perry's testimony that, given his 19 years of drug-interdiction work, Johnson's conduct stood out to him "significantly" and led him to believe that the bag "possibly . . . contained contraband." R. vol. 2, 45. Perry reasoned that Johnson moving the backpack indicated that the backpack belonged to him and that he was attempting to "conceal" and "distance himself" from it. *Id.* And as we have explained, "furtive efforts"—like moving the backpack—can factor into the probable-cause analysis. *United States v. McGehee*, 672 F.3d 860, 870 (10th Cir. 2012). As for identification, the district court credited Perry's testimony that he has arrested "numerous passengers transporting illegal narcotics . . . traveling under false names." R. vol. 2, 42. Although he did not yet *know* that Johnson in particular was traveling under a false name, Perry explained that sometimes after examining a passenger's ticket (as he did here) he will ask the passenger for identification; at that point, because the passenger is traveling under a fake name, the passenger will deny having identification.

Johnson argues that these first two facts are too commonplace and consistent with innocent behavior to tip the scales toward probable cause. In support, he presents an innocent explanation for moving the backpack—that he placed the backpack beneath the seat next to him to make the seat look occupied so he could sit alone—and points out (as Perry testified) that Greyhound does not require passengers to provide identification. But the innocence or guilt of Johnson's conduct misconstrues the relevant inquiry. The pertinent question "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to

10

particular types of non[]criminal acts." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Thus, as the Supreme Court has explained, "innocent behavior frequently will provide the basis for a showing of probable cause." *Id*. Here, the district court credited Perry's vast drug-interdiction experience to conclude that these two facts supported probable cause, and we decline to disturb those findings. *See Ornelas v. United States*, 517 U.S. 690, 700 (1983) (explaining "that a police officer may draw inferences based on his [or her] own experience in deciding whether probable cause exists" and that appellate courts "should give due weight to a trial court's finding that the officer was credible and the inference was reasonable"); *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (according "deference to an officer's ability to distinguish between innocent and suspicious actions"). Thus, although moving the backpack and failing to produce identification could be consistent with innocent behavior, we reject Johnson's argument that neither fact weighs in favor of finding probable cause.

We consider next whether, as the district court found, Johnson lied to Perry when he said did not have any luggage. According to Johnson, he did not lie because he understood Perry to be asking only whether he had luggage underneath the bus, not whether he had any bags at all. But in response to Perry's question about whether he had luggage, Johnson gave a categorical answer—that he had "[n]one at all." R. vol. 1, 102. And a bit later in the exchange, when Perry specifically asked about the backpack underneath the window seat, Johnson first stated that the bag was not his. Given that sequence of events, we conclude that the district court did not clearly

11

err in finding that Johnson lied and appropriately considered that lie in its probable-cause assessment. *See United States v. Moore*, 22 F.3d 241, 243–44, 244 n.4 (10th Cir. 1994) (finding that suspect's lie to officer was "*not* consistent with innocent travel" and that district court properly relied on this fact in its reasonable-suspicion calculus).

Next, we take up the "self-search" of the backpack. Johnson argues that inferring suspicion from the self-search would impermissibly ground suspicion in the refusal to consent to a search. *See, e.g.*, *Santos*, 403 F.3d at 1125–26 ("A refusal to consent to a search cannot itself form the basis for reasonable suspicion: '[I]t should go without saying that consideration of such a refusal would violate the Fourth Amendment.'" (quoting *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997))). But as the government points out, Johnson misreads the district court's analysis. The district court did not factor any lack of consent into its probable-cause calculation. Rather, it credited Perry's experience that individuals will conduct a self-search to "conceal . . . contraband" while attempting to allay an officer's concern. R. vol. 2, 53. Moreover, the district court also found that, in conducting that self-search, Johnson attempted to block Perry's view of the bag's contents.[6] These furtive actions added to Perry's interpretation of Johnson's self-search as suspicious, further

---

[6] Johnson argues that, given the district court's finding that Johnson was seated during the self-search, it would be "anatomically . . . very difficult" for Johnson to block Perry's view. Aplt. Br. 21. We reject this contention because the record supports the district court's finding on this point, and potential anatomical difficulty does not render the district court's finding clearly erroneous.

contributing to probable cause. *See McGehee*, 672 F.3d at 870. Accordingly, we reject Johnson's argument that the self-search does not support probable cause.

Turning to the next fact—Perry pointing out the bundle—Johnson argues that a photo Perry took following the arrest (an attempt to recreate what he saw on the bus) does not readily show whether the bundle contained contraband. We agree that the photo does not reveal much; indeed, even the government admits that "the bundle [as shown in that photograph] does not necessarily jump out to the untrained eye." Aplee. Br. 23. But the district court based its conclusion about what Perry saw during Johnson's self-search on more than just the photo. Most notably, it again credited Perry's testimony, based on his years of experience, that he in fact saw "an oblong-shaped bundle" wrapped in clothing and protruding from the backpack. R. vol. 2, 54. And Perry further testified that drug traffickers often hide bundles of illegal narcotics inside articles of clothing and that this bundle, based in part on its shape and size, could contain contraband. We therefore reject Johnson's argument that Perry's view of the bundle does not support probable cause.

Finally, we consider Johnson's failure to answer Perry's question about the bundle, which he asked after pointing it out. Although only about two seconds elapsed from the end of Perry's question until Perry asked Johnson to put his hands up, Johnson admitted that he did not respond to Perry's question. This fact therefore also bolsters probable cause. *See United States v. Albers*, 136 F.3d 670, 674 (9th Cir. 1998) (supporting probable cause by noting, among other facts, that suspects "seemed nervous and refused to answer [the officer's] questions").

13

That brings us to the ultimate question: whether these facts, "in their totality," are enough for probable cause. *Valenzuela*, 365 F.3d at 897. The facts most strongly in the government's favor are: (1) Johnson's lie about whether he had luggage and whether the backpack was his, (2) Johnson's self-search while attempting to obstruct Perry's view of the backpack, and (3) Perry's visual identification of the bundle of clothing. Likewise relevant—but accorded less weight—are (4) that Johnson placed the backpack under the seat next to him as he overheard Perry questioning other passengers and (5) Johnson's lack of identification. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (noting that "circumstances describ[ing] a very large category of presumably innocent travelers" are usually insufficient to justify seizure). Also falling in this latter category is (6) Johnson's failure to answer Perry's final question. Taking these facts together, we conclude that when Perry observed the bundle in Johnson's backpack, the facts and circumstances within his knowledge sufficiently warranted his belief that Johnson had committed or was committing an offense. *See Sanchez*, 13 F.4th at 1073. Accordingly, we conclude that Perry had probable cause to arrest Johnson and affirm the district court's ruling on this point.

## II.    Lawfulness of Warrantless Searches

### A.    Search and Seizure on the Bus

We turn next to Perry's actions following Johnson's arrest. Recall that at this point, Perry remained on the bus, reached inside Johnson's still-open backpack, and felt the bundle of clothing inside the backpack. Johnson argues that this warrantless search violated the Fourth Amendment.

14

The Fourth Amendment protects the "right of the people to be secure in their . . . effects[] against unreasonable searches and seizures." U.S. Const. amend. IV. "A search or seizure is presumptively reasonable" under the Fourth Amendment if it is "based on a warrant supported by probable cause." *United States v. Banks*, 884 F.3d 998, 1011 (10th Cir. 2018). But because the Fourth Amendment requires only reasonableness—as opposed to a warrant—"there are various exceptions to the warrant requirement." *Id.* "The government bears the burden of proof to justify warrantless searches and seizures" by "a preponderance of the evidence." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001).

One exception to the warrant requirement is the plain-view exception, which allows a law-enforcement officer to seize evidence of a crime without a warrant under a limited set of circumstances. *See United States v. Angelos*, 433 F.3d 738, 747 (10th Cir. 2006). It applies if "(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent . . . and (3) the officer had a lawful right of access to the object." *Id.* (quoting *United States v. Thomas*, 372 F.3d 1173, 1178 (10th Cir. 2004)). For an object's incriminating character to be immediately apparent, there must be "probable cause to believe it [is] contraband or evidence of a crime." *Id.* But although the plain-view exception "may support the warrantless *seizure* of a container believed to contain contraband," it does not automatically support a "subsequent *search* of the concealed contents of the container." *United States v. Corral*, 970 F.2d 719, 725 (10th Cir 1992). Rather, a subsequent search is only valid if "the contents of a seized

15

container are a foregone conclusion" (or if the search is "accompanied by a warrant or justified by one of the exceptions to the warrant requirement"). *Id.*

Here, the incriminating character of the backpack and bundle was immediately apparent. That is, the same facts supporting Perry's probable cause to arrest Johnson also gave him probable cause to believe the backpack and bundle of clothing—both of which were in Perry's lawful plain view—contained evidence of a crime. Accordingly, Perry could seize those items. *See Corral*, 970 F.2d at 725 (explaining that officer could seize package because there was "probable cause to associate [it] with criminal activity"). And seizing these objects must logically allow for some incidental touching. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987) ("It would be absurd to say that an object could lawfully be seized and taken from the premises[] but could not be moved for closer examination."). But Perry could only *search* the backpack and the bundle if he obtained a warrant, another exception applied, or the contents were a foregone conclusion. *See Corral*, 970 F.2d at 725. The district court concluded that the contents were a foregone conclusion, a ruling that Johnson challenges on appeal.

### 1.    Whether Perry Searched the Bundle on the Bus

But before turning to Johnson's challenge, we first address the argument that the government advances as an alternative basis to affirm: that Perry's conduct on the bus in relation to the bundle did not amount to a search at all.[7] *See United States v.*

---

[7] The district court did not clearly explain whether it considered the bundle of clothing to be a container separate from the backpack. The government, for its part,

*Davis*, 339 F.3d 1223, 1227 (10th Cir. 2003) (noting that we can affirm for any reason supported by record). Under the Fourth Amendment, a search "occurs when government officials violate an individual's legitimate expectation of privacy." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998); *see also Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring) (articulating expectation-of-privacy test). That is, "[w]hen an individual seeks to preserve something as private, and [that] expectation of privacy is one that society is prepared to recognize as reasonable, we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *United States v. Mathews*, 928 F.3d 968, 975 (10th Cir. 2019) (quoting *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018)).

In the context of passenger luggage, an officer violates a passenger's reasonable expectation of privacy when the officer touches the luggage in a manner that exceeds how a fellow passenger or transportation employee would. *See Bond v. United States*, 529 U.S. 334, 337–39 (2000). Thus, in *Bond*, the Supreme Court held that an officer's "probing tactile examination" done in an "exploratory manner" on a bus was an unreasonable search. *Id.* The Court explained that a passenger should reasonably expect that his or her "bag may be handled." *Id.* at 338. But the passenger

---

suggests that Johnson's open backpack was the relevant container. But consistent with the Supreme Court's broad understanding of containers, we conclude that the bundle was its own container. *See New York v. Belton*, 453 U.S. 454, 460 n.4 (1981) (explaining that *container* "denotes any object capable of holding another object" and "includes . . . bags, clothing, and the like").

"does not expect that other passengers or bus employees will, as a matter of course, feel the bag in an exploratory manner." *Id.* at 338–39.

Our caselaw follows the same thread. In *Nicholson*, we held that, "[b]y manipulating [the defendant's] bag in a manner that [the defendant] did not reasonably expect from other passengers, [the officer] conducted a search within the meaning of the Fourth Amendment." 144 F.3d at 639. Further, we found it significant that the officer obtained information beyond what a fellow passenger might learn from touching or moving the bag in the ordinary course of travel; the officer testified that by "manipulat[ing]" the bag, he detected bundles with a "distinct feel." *Id.* Notably, we contrasted that holding from our earlier decision in *United States v. Gault*, which held an officer did not search a train passenger's bag when he kicked and lifted it, explaining that the information obtained—the bag's "weight and the solidity of its contents"—is "the same information" a passenger would obtain "by kicking the bag accidentally or by lifting it to clear the aisle." 92 F.3d 990, 992 (10th Cir. 1996).

Here, the government argues that "a search necessitates an 'attempt to find something or to obtain information'" and that the record does not show whether Perry "manipulated the bundle . . . to discern its character or whether his tactile observations were simply incident to his seizure of the bag and its contents." Aplee. Br. 26 (quoting *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)). But as Johnson argues, Perry's testimony demonstrates that this is precisely what he tried and succeeded in doing when he felt the bundle.

18

Contrary to the government's contention, Perry's testimony is not ambiguous on this point: Perry testified that he reached inside the backpack and felt the bundle. As he did, he probed, gaining new information—Perry discovered that the bundle was "pretty large," R. vol. 2, 60, "very hard to the touch," "had like a crinkling or kind of crushing feel, and . . . was oblong shaped," *id.* at 134. He explained that feeling the bundle "definitely confirmed" his earlier suspicion that the bundle contained illegal narcotics. *Id.* at 60. Thus, we conclude that Perry's "probing tactile examination" of the bundle following Johnson's arrest, done in an "exploratory manner," amounted to a warrantless search. *Bond*, 529 U.S. at 337–39. Perry therefore exceeded the "minimal intrusion that is permitted in a plain[-]view seizure."[8] *United States v. Miller*, 769 F.2d 554, 557 (9th Cir. 1985); *see also United States v. Most*, 876 F.2d 191, 198 n.13 (D.C. Cir. 1989) (observing, in dicta, that officer exceeded "the sort of highly limited contact that would be necessary if the bag were moved from one location to another" because "[t]he bag had a drawstring and could easily be transported without the [officer's] physical manipulation"). We accordingly reject the government's alternative basis for affirming.

---

[8] Contrary to the government's suggestion, this result is not altered by the fact that Johnson's backpack was open when Perry felt the bundle. "It is fundamental," we have explained, that "absent some special exception, all containers and packages will receive the full protection of the [F]ourth [A]mendment during a police search." *United States v. Bonitz*, 826 F.2d 954, 957 (10th Cir. 1987).

### 2.    Whether the Bundle's Contents Were a Foregone Conclusion

We now turn to Johnson's challenge to the district court's foregone-conclusion ruling. Recall that an officer may conduct a warrantless search of a container in plain view if its contents are a foregone conclusion. *See Corral*, 970 F.2d at 725. But the foregone-conclusion standard is high: It requires "virtual certainty" that a container holds contraband. *Id.* at 726. This is "a degree of certainty as to the contents . . . equivalent to the plain view of the [contraband] itself."[9] *Id.*. With scant analysis, the district court cited two of our cases and concluded that the contents of the bundle were a foregone conclusion. Johnson argues that those cases are distinguishable, and we agree.

In *Corral*, a detective working undercover had previously cut a "slit into the package" and "confirmed that [it] contained cocaine." 970 F.2d at 726. When officers later seized the package, the slit, combined with the police's continuous surveillance of the suspects, ensured it was the same package as before. *Id.* Thus, we upheld a search of the package because the police "knew to a virtual certainty that the

---

[9] We emphasize that the foregone-conclusion standard, which permits the warrantless *search* of a legally seized object, is a higher bar than what is required to *seize* the object in the first place. As we stated earlier, whether an officer may seize an object requires that its connection to criminal behavior is "immediately apparent"—a standard equivalent to probable cause and decidedly *not* a standard requiring "an unduly high degree of certainty as to the incriminatory character of the evidence." *Texas v. Brown*, 460 U.S. 730, 741 (1983) (plurality opinion). The foregone-conclusion standard, by contrast, requires "knowledge approaching certainty." *Corral*, 970 F.2d at 725–26.

package" at issue "contained cocaine." *Id.* The facts in *Corral* sit far afield from what Perry knew to a "virtual certainty" here—that there was a bundle in a backpack. *Id.*

The other case cited by the district court, *United States v. Jackson*, 381 F.3d 984 (10th Cir. 2004), is also distinguishable. In *Jackson* (which also involved Special Agent Perry), a suspect consented to the search of his bag on a train, which led to the discovery of a shaving kit that contained baby powder. *Id.* at 987. Within the scope of the suspect's consent, Perry removed the baby-powder lid with a knife, inserted the blade into the container, and "felt something hard." *Id.* at 987–88. Perry then moved some of the baby powder aside and "saw a white substance" inside a clear plastic baggy consistent with the "color and texture . . . of powdered cocaine." *Id.* at 987. Later, at the DEA office, Perry cut off the top section of the container to remove the plastic bag. *Id.* That bag was "heat-sealed and contained another clear plastic bag," which held cocaine. *Id.* We upheld the search at the DEA office, concluding that it was a "foregone conclusion" that the baby-powder container held drugs, noting that Perry had already seen "a white powdery substance" inside a baggy within the baby-powder container during the legal consent search. *Id*. at 989. Here, unlike in *Jackson*, when Perry felt the bundle of clothing, Perry had not seen anything to visually confirm that there was contraband within it. Indeed, Perry confirmed that he did not see the package's outer tinfoil wrapping until he searched the backpack at the DEA office. Thus, *Jackson* is distinguishable.

Defending the district court's decision, the government, in addition to *Corral* and *Jackson*, relies on Justice Stevens's concurrence in *Brown*, 460 U.S. at 747–51

21

(Stevens, J., concurring). But in *Brown*, the container at issue (an opaque balloon tied in a specific manner) was an object that "spoke volumes as to its contents— particularly to the trained eye of the officer." *Id.* at 733, 743 (plurality opinion). Here, by contrast, a bundle of clothes that could have wrapped up any number of items lacks such a distinctive quality. *See id.* at 751 (Stevens, J., concurring) (contrasting opaque balloon tied in specific manner that "might be used *only* to transport drugs" with "suitcase or a paper bag [that] may contain an almost infinite variety of items" (emphasis added)); *see also id.* at 746 (Powell, J., concurring) ("We are not advised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one [the officer] seized."). *Brown*, therefore, is distinguishable and does not support the conclusion that the contents of the bundle here were a foregone conclusion.

Indeed, the facts here are more akin to cases in which we have held that a container's contents could not be searched without a warrant. For instance, in *United States v. Donnes*, the police opened a camera-lens case that was found "inside [a] glove" that also contained a syringe. 947 F.2d 1430, 1438 (10th Cir. 1991). We explained that, although there may have been probable cause to seize the lens case, the government could not conduct a warrantless search of the container, which was "unrevealing in appearance." *Id.* at 1439 (quoting *Miller*, 769 F.2d at 560). Similarly, in *Bonitz*, we held that a "hard plastic case"—which could lawfully be seized because officers had "probable cause to suspect its contents" were connected with criminal activity—could not be opened without a warrant because it "did not reveal its

22

contents." 826 F.3d at 956. And notably, we reached this conclusion "even though [the case] could perhaps have been identified as a gun case by a firearms expert." *Id.*

In sum, the bundle of clothing here is very much like the containers at issue in *Donnes* and *Bonitz* and unlike the distinctive balloon in *Brown*. And *Corral* and *Jackson* are distinguishable because in both cases, the officers had lawfully laid eyes on the contraband itself, not merely a nonspecific container.[10] Thus, we conclude that the bundle's contents were not a foregone conclusion when Perry searched it on the bus. Perry's warrantless search on the bus therefore violated the Fourth Amendment.

**B.    The Search at the DEA Office**

That brings us to the search of the backpack and bundle at the DEA office. Though it did not distinguish between the search on the bus and the search at the office, the district court implicitly found the office search justified as a foregone conclusion. Johnson contests that ruling on appeal.

As a preliminary matter, the government contends that Johnson waived any challenge to Perry's search at the office and that we lack discretion to overlook his waiver. In support, the government directs us to Federal Rule of Criminal Procedure 12(c), which governs the failure to file timely pretrial motions, including suppression motions. Under that rule, "[a] defendant must raise a motion to suppress evidence before trial unless there is good cause for the delay." *United States v. Fernandez*,

---

[10] Indeed, *Corral* expressly distinguished *Donnes* on those grounds, explaining that the police in *Donnes* "never saw the contents" of the lens case at issue. *Corral*, 970 F.2d at 726.

23

24 F.4th 1321, 1328 (10th Cir. 2022); *see also* Fed. R. Crim. P. 12(b)(3)(C), (c)(3).

This obligation also applies to unmade arguments in an otherwise timely motion. *See*

*Fernandez*, 24 F.4th at 1328. The question, then, is whether Johnson sufficiently

raised his challenge to the office search in the district court to preserve it for appeal.

Johnson's memorandum of law in support of his suppression motion argued

that the drug evidence against him was the "fruit of an illegal seizure and almost

immediate subsequent search" without specifying which search Johnson meant to

challenge. R. vol. 1, 21. But later in that same filing, Johnson challenged the

photographs taken at the DEA office, photographs that were only taken after the

contents of the backpack and the bundle were indisputably searched there. In

addition, Johnson's supplemental filing again addressed the photographs taken at the

DEA office and included a reference to Perry manipulating the long underwear at the

DEA office, which again shows that Johnson's suppression motion challenged the

search at the office. And Johnson's pro se reconsideration motion also directly

challenged the search of the backpack at the office by referring to Perry's exploration

of the contents of the bundle, which occurred only at the DEA office. *See Fernandez*,

24 F.4th at 1329 (looking at defendant's reconsideration motion to determine whether

he preserved argument for appeal). In all, we find these assertions "sufficiently

definite, specific, detailed[,] and nonconjectural" to preserve Johnson's challenge to

the search at the DEA office. *United States v. White*, 584 F.3d 935, 949 (10th Cir.

2009) (quoting *United States v. Gambino-Zavala*, 539 F.3d 1221, 1227 n.2 (10th Cir.

2008)).

Additionally, the district court expressly stated that it considered all of these filings. And its ruling refers to "the search of Johnson's bag following his arrest" without distinguishing between the bus search and the DEA office search. R. vol. 1, 126. Given that the district court did not analyze whether Perry feeling the bundle on the bus was a search—and because the parties did not dispute in the district court that Perry searched the backpack and bundle at the DEA office—we conclude that the district court's decision is best read to encompass that later search as well. *See United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003) (finding issue preserved for appeal where district court raised it sua sponte). Thus, we reject the government's waiver argument and conclude that the record—comprising Johnson's suppression motion, his supplemental filing, his pro se reconsideration motion, and the district court's decision—sufficiently preserved Johnson's challenge to the search at the DEA office.

We turn now to whether the search at the DEA office violated the Fourth Amendment. Our analysis largely mirrors our analysis of the search on the bus. Again, the government's only argument to justify the search of the backpack and bundle at the DEA office is that, by then, their contents were a foregone conclusion. As Johnson acknowledges, at the time of the search at the DEA office, Perry knew a few additional facts about the bundle from his actions on the bus: Perry confirmed it was oblong-shaped and learned that it was "hard to the touch" and had a "crinkling or kind of crushing feel." Rep. Br. 12 (quoting R. vol. 2, 134). But because (for the reasons we previously explained) the search on the bus was illegal, Perry could not

rely on those new, unlawfully obtained facts to justify the later search at the DEA office. *See United States v. White*, 326 F.3d 1135, 1140 (10th Cir. 2003) (explaining that "[t]he exclusionary rule enjoins the [g]overnment from benefiting from evidence it has unlawfully obtained" (quoting *United States v. Crews*, 445 U.S. 463, 475 (1980))).

Yet even if we were to accept the government's contention that the Perry's conduct on the bus was not a search, the result would not change. As we have emphasized, the foregone-conclusion standard is a high bar, one "equivalent to the plain view of the [contraband] itself." *Corral*, 970 F.2d at 726. And the additional knowledge Perry obtained on the bus—that there was something hard and crinkly in the bundle of clothing—did not raise Perry's probable cause to believe that the bundle contained contraband into a "virtual certainty" that it did. *Id.* In short, these new facts would not alter the foregone-conclusion analysis. We therefore hold that Perry also conducted an illegal warrantless search at the DEA office.

## C.    Scope of Remand

Typically, a holding that a search is illegal leads to the suppression of the drugs discovered as a result of the illegal search. *See United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018) (explaining that evidence obtained in violation of Fourth Amendment may not be used in criminal proceeding against victim of violation). But in a last-ditch effort to avoid the exclusion of the drugs Perry discovered during his illegal searches, the government argues it should be permitted to assert new grounds to support the evidence's admission on remand. But it provides no authority to

support that request. And given that it is the government's burden to prove

warrantless searches fall within an exception to the warrant requirement, we decline

to give the government another opportunity to make its case on remand. *See Zubia-*

*Melendez*, 263 F.3d at 1160 (noting government's burden to prove exception to

warrant requirement); *United States v. Hernandez*, 847 F.3d 1257, 1262 (10th Cir.

2017) (declining to remand for consideration of new theory justifying admission of

evidence); *United States v. Young*, 263 F. App'x 710, 716 (10th Cir. 2008)

(unpublished) (rejecting government's request to "make entirely new arguments" to

justify search on remand).[11]

In sum, we hold that the fruit of both illegal searches must be suppressed, and

we remand for further proceedings consistent with this opinion.[12]

### Conclusion

We affirm the district court's ruling that Perry had probable cause to arrest

Johnson and to seize the backpack and bundle. But we conclude that when Perry felt the

bundle on the bus, he conducted a warrantless search of a container, the contents of

which were not a foregone conclusion. Perry therefore could not rely on that illegally

---

[11] We cite this unpublished case for its persuasive value. *See* 10th Cir. R. 32.1(A).

[12] On appeal, neither party briefed what should become of Johnson's incriminating statements. And because the district court concluded Perry's conduct was lawful, it did not reach that issue either. Accordingly, the district court is free to consider on remand whether the taint of Perry's illegal conduct had been purged when Johnson made those statements. *See United States v. Walker*, 933 F.2d 812, 818 (10th Cir. 1991) (remanding for district court to consider whether evidence obtained from suspect following illegal detention was "sufficiently an act of free will to purge the primary taint" of illegality (quoting *Brown v. Illinois*, 422 U.S. 590, 597 (1975))).

obtained information to justify the later warrantless search at the DEA office. Yet even if feeling the bundle on the bus was not a search, that new information still did not make the contents of the backpack and bundle a foregone conclusion. Thus, these warrantless searches violated the Fourth Amendment, and the drugs that Perry discovered must be suppressed. We accordingly reverse the district court's denial of Johnson's suppression motion as to Perry's illegal searches, vacate Johnson's conviction and sentence, and remand for further proceedings.